**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MICHAEL PHELPS and KALEIGH WILKERSON, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF MARION, ILLINOIS, WILLIAMSON COUNTY, ILLINOIS, JEFF DIEDERICH, JESSE THOMPSON, NICHOLAS KELTNER, ALEX JIMINEZ, JAIRIAH ROBERTS, DARREN FERRELL, DUSTIN KELLY, and KRASHAWN KNIGHT, <br><br> Defendants. | Case No. 3:25-CV-01627-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This case arises out of a series of allegedly illegal stops made by officers of the municipalities of Williamson County, Illinois, and the City of Marion, Illinois. Plaintiffs Michael Phelps and Kaleigh Wilkerson (collectively, "Plaintiffs") originally filed their Complaint in state court. (Doc. 1-1). Defendants Jeff Diederich, Darren Ferrell, Dustin Kelly, Krashawn Knight, and Williamson County (collectively, the "Williamson County Defendants") removed to this Court (Doc. 1) and filed a Motion to Dismiss (Doc. 6). Defendants Alex Jiminez, Nicholas Keltner, Jairiah Roberts, Jesse Thompson, and City of Marion (collectively, the "Marion Defendants") also filed a Motion to Dismiss. (Doc. 21). Plaintiffs responded to both motions. (Docs. 9, 27). For the following reasons, the motions to dismiss are granted in part and denied in part.

### BACKGROUND

According to the complaint—the allegations in which are taken as true for purposes of the motion to dismiss—on July 10, 2024, Plaintiffs were driving through Marion, Illinois, toward Colorado when they were stopped twice by Defendants. (Doc. 1-1, ¶¶ 16–31).

The first stop happened that morning as Wilkerson drove. Wilkerson was pulled over by Defendants Alex Jiminez and Jairiah Roberts, police officers for the City of Marion. *Id.* ¶ 18. They told Wilkerson that she had been pulled over for tailgating and changing lanes without her signal. *Id.* This was untrue, and the officers knew it; they just wanted to detain Plaintiffs long enough for a drug-sniffing dog to arrive. *See id.* ¶ 19. (The charges filed against Wilkerson based on this stop were ultimately dropped. *Id.* ¶¶ 21–22.) Jiminez and Roberts detained Plaintiffs for roughly 40 minutes, but the drug dog apparently never arrived. *See id.* ¶ 20. They then allowed Plaintiffs to leave (though not without giving Wilkerson two tickets). *Id.* ¶ 20. Phelps switched to the driver's seat, and Plaintiffs continued on their way. *Id.* ¶ 24–26.

But before they let Plaintiffs leave, Jiminez and Roberts reached out to their fellow defendants: Marion police officers Nicholas Keltner and Jesse Thompson;[1] Williamson County Sheriff Jeff Diederich;[2] and Williamson County Sheriff's Office employees Krashawn Knight, Darren Ferrell, and Dustin Kelly.[3] *See id.* ¶ 23. Together, they agreed

---

[1] (Doc. 1-1, ¶¶ 9–10).
[2] (Doc. 1-1, ¶ 8).
[3] (Doc. 1-1, ¶¶ 13–15).

to keep Plaintiffs under surveillance. *Id.* That way, Defendants could pull Plaintiffs over again—and this time, they would bring the drug-sniffing dog. *Id.*

At the second stop, a minimum of five police vehicles[4] surrounded Plaintiffs' car. *Id.* ¶ 26. Thompson told Phelps they were being stopped for running a red light. *Id.* ¶ 28. (Phelps had not, in fact, run a red light, and Thompson knew it. *Id.* ¶¶ 28–29.) Knight, meanwhile, directed a canine around the vehicle, and the canine signaled to the passenger-side door. *Id.* ¶ 27. The officers then searched the entire vehicle, including the locked glove compartment. *Id.* All told, the officers recovered $3,800 and a gun purchased in the State of Utah. *Id.* Plaintiffs were then arrested and forced to spend three days in the Williamson County jail. *Id.* ¶ 31. They were charged with two felony offenses, but the charges were later dropped. *Id.* ¶¶ 31–32.

The complaint advances a total of 11 counts under both federal and state law. Wilkerson asserts claims of illegal seizure under the Fourth Amendment[5] and false arrest under Illinois common law against Jiminez and Roberts (Counts I and IV) and all individual defendants (Counts II and V). Phelps asserts claims of illegal seizure under the Fourth Amendment and false arrest under Illinois common law against all individual defendants (Counts VI and VIII). Plaintiffs each assert a claim of illegal search under the

---

[4] Plaintiffs do not identify which officers were driving these vehicles or present at this stop beyond Knight and Thompson. (*See* Doc. 1-1, ¶¶ 26–31).

[5] In the complaint, Counts I, II, and VI are titled "False Arrest," but purport to be brought under 42 U.S.C. § 1983 and challenge the arrests as having violated the Fourteenth Amendment. (Doc. 1-1, ¶¶ 35–48, 69–75). The Court construes these counts as alleging an illegal arrest (rather than a "false arrest") under the Fourth Amendment (as incorporated by the Fourteenth Amendment). It does so because § 1983 does not provide a cause of action for state law false arrest claims, *e.g.*, *Doe v. Bd. of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 944 (N.D. Ill. 2006), and because state law false arrest claims are already covered by Counts V and VIII (Doc. 1-1, ¶¶ 63–68, 84–89).

Fourth Amendment against all individual defendants (Counts III and VII). They assert

*Monell* claims against the City of Marion (Count IX) and Williamson County (Count X).

And finally, Phelps asserts a claim of conversion against the City of Marion (Count XI).

The Williamson County Defendants filed a motion to dismiss, challenging only

Counts II, III, V-VIII, and X. (Doc. 6). Plaintiffs filed a response, asking the Court to deny

the motion or, to the extent that the motion was meritorious, grant them leave to amend

their complaint. (Doc. 9, at 7–8). The Williamson County Defendants did not file a reply.

By contrast, the Marion Defendants' motion to dismiss is addressed to all counts

in the complaint. (*See* Doc. 21). They ask the Court to dismiss Counts I–X and to remand

Count XI. *Id.* at 3. To support this request, however, the Marion Defendants merely

"adopt the factual . . . and legal argument[s]" set forth by the Williamson County

Defendants. *Id.* at 2. In other words, the Marion Defendants' motion simply incorporates

the Williamson County Defendants' motion by reference.[6] They make only one

---

[6] The Marion Defendants' decision to rely almost exclusively upon the legal arguments of the Williamson County Defendants has two consequences. First, the Williamson County Defendants did not challenge Counts I or IV, each of which applies only to Marion police officers Jiminez and Roberts. By relying solely on the Williamson County Defendants' arguments, the Marion Defendants have waived their challenge to Counts I and IV. *E.g.*, *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006))). Their motion is accordingly denied as to those counts.
  Second, much of the legal analysis in the Williamson County Defendants' motion is centered on the Williamson County Defendants. The Marion Defendants fail to articulate how this analysis should apply to them. Specifically, the Williamson County Defendants argue that the *Monell* claim against Williamson County fails for three reasons: (1) because Plaintiffs failed to articulate a constitutional violation committed by a Williamson County officer (Doc. 6, at 6); (2) because Plaintiffs failed to allege sufficient facts under *Monell, id.* at 7; and (3) because Sheriff Diederich's conduct *as Sheriff* cannot be the basis for the County's vicarious liability, *id.* at 7–8. The third reason is plainly inapplicable as to Marion; no Marion sheriff is a party to this suit. And the first reason does not apply where the Marion Defendants have failed to challenge Count I, which alleges a constitutional violation by Jiminez and Roberts. Only the second reason—an argument that Plaintiffs failed to plead a policy or custom—is applicable to Marion.

independent assertion: that the "factual basis" for the *Monell* claim against the City of Marion (Count IX[7]) "is weaker than the [factual basis for the] remaining Counts." *Id.* at 3. Plaintiffs' response to the motion incorporates by reference their prior response to the Williamson County Defendants. (Doc. 27). The Marion Defendants did not file a reply.

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). To survive a Rule 12(b)(6) motion, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.*

I.   **Illegal Search and Seizure at the Second Stop: 42 U.S.C. § 1983 (Counts II, III, VI, and VII)**

In Counts II, III, VI, and VII, Plaintiffs allege that each individual defendant is liable under 42 U.S.C. § 1983 for an unconstitutional search and seizure arising from the

---

"It is not the district court's job to flesh out every single argument not clearly made." *Williams v. Dieball*, 724 F.3d 957, 963 (7th Cir. 2013). Accordingly, to the extent that the Williamson County Defendants' arguments are not clearly cross-applicable, the Marion Defendants' failure to articulate those arguments in their motion constitutes waiver.

[7] In their Motion to Dismiss, the Marion Defendants refer to the *Monell* claim against the City of Marion as "Count X." (Doc. 21, at 3). The Court assumes they meant to refer to Count IX, as Count X is brought against Williamson County. The Court construes their motion accordingly.

second stop. To state a viable § 1983 claim, a plaintiff must allege (1) a deprivation of her rights under the Constitution or federal law, and (2) that the deprivation was committed by a defendant acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Individual liability under § 1983 further requires personal involvement in the constitutional wrongdoing; a defendant cannot be held liable unless he caused or participated in the alleged deprivation. *Wolf-Lillie v. Sondquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (affirming dismissal for plaintiff's failure to allege officials' personal involvement in the constitutional wrongdoing).

Defendants challenge these counts as to all individual defendants (except Knight and Thompson) for failing to allege the required personal involvement.[8] (Doc. 6, at 4–6).[9] Although each individual defendant is sued under Counts II, III, VI, and VII, only the actions of Knight and Thompson are identified in the complaint. (*See* Doc. 1-1, ¶¶ 26–31, 42–56, 69–83). Plaintiffs allege Knight directed a canine inspection of their vehicle, giving rise to a search. *Id.* ¶ 27. And they allege Thompson "forced" them to exit their vehicle and lied about the reason for the stop. *Id.* ¶¶ 27–29. But the complaint is silent as to the actions and identities of the other officers at the second stop.[10] The motion to dismiss

---

[8] Defendants do not appear to argue that the complaint failed to state a claim as to whether Plaintiffs were (1) subjected to a constitutional deprivation (2) by a defendant acting under color of state law, focusing instead on the personal involvement requirement. (Doc. 6, at 4–6).

[9] Because the Marion Defendants incorporate the Williamson County Defendants' arguments nearly wholesale, *see supra* note 6, the Court cites only to the Williamson County Defendants' motion except where a distinction is necessary.

[10] The complaint twice references "Defendants" as a collective noun in its description of the second stop. (Doc. 1-1, ¶ 27 (stating "Defendants then used this alert as a pretext to search the entire vehicle," but not identifying who participated in the search); Doc. 1-1, ¶ 30 (stating "[t]he offered reason for the stop was a pretext to permit the Defendants to conduct and [sic] illegal search of the Plaintiffs' vehicle," but again not

argues that "these allegations do not establish that any . . . Defendants personally searched the interior of the vehicle, found the handgun, issued any traffic citations, or arrested Plaintiffs," thus "undermin[ing] any claim that . . . Defendants were personally involved the misconduct alleged." (Doc. 6, at 5).

Plaintiffs' first counterargument is unavailing. They insist that they *did* allege personal involvement by each individual defendant (Doc. 9, at 3, 5) and assert that each Defendant "participated in the [second] stop, the searches, and the eventual arrest. They were all there and did their part in these unconstitutional deprivations." *Id.* at 5. But the complaint does not contain any details as to what "part" in the second stop each Defendant ostensibly played; in fact, it does not even allege they were there.[11] The complaint only describes the presence and actions of Knight and Thompson at the second stop. This is not enough: "An allegation that *someone*" participated in an illegal search and seizure "does not propound a plausible contention that *a particular person* did anything wrong. . . . Each defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

---

identifying who participated)). It is not clear whether these references are meant to refer only to Thompson and Knight, who are mentioned by name, or to refer to some larger but indeterminate group of Defendants.

[11] Plaintiffs resist this conclusion by pointing to their allegation that "five police vehicles jointly participated in forcing [them] to stop for the purpose of letting Knight's canine conduct a sniff search." (Doc. 9, at 3 (citing Doc. 1-1, ¶ 26)). But this allegation does not specify *who was driving the five police vehicles*. If the other officers who participated in the second stop were the other named defendants, the complaint should say so. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013); *cf. Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citations omitted)), *overruled in part by*, *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488–90 (7th Cir. 2023) (rejecting a blanket prohibition on constructively amending a complaint through briefing but "wholeheartedly agree[ing]" that the practice is generally inappropriate).

Plaintiffs next argue that each officer is liable under a § 1983 conspiracy theory.[12] (Doc. 9, at 4–5). To support conspiracy liability under § 1983, a plaintiff "must allege '(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights.'" *Pena v. Ortiz*, 521 F. Supp. 3d 747, 751 (N.D. Ill. 2021) (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015)). Once a conspiracy is formed, a conspirator may be liable for acts committed by co-conspirators in furtherance of the conspiracy, even if the conspirator did not personally carry out those acts. *Geinosky v. City of Chicago*, 675 F.3d at 750.

Here, Plaintiffs allege that the individual defendants all reached an agreement to surveil them for the purpose of conducting the second pretextual stop. (Doc. 1-1, ¶ 23). And the allegation that they were unconstitutionally subjected to a search and seizure (an overt act) is not challenged by Defendants. Drawing all permissible inferences in their favor, it is possible that Plaintiffs state a claim under this theory as to each individual defendant.

---

[12] While Plaintiffs do discuss § 1983 conspiracy liability, their brief primarily argues for conspiracy liability under 42 U.S.C. § 1985(3). (Doc. 9, at 4–5). Contrary to their assertions, Plaintiffs do not state a claim under § 1985(3), because they do not allege any "racial, or perhaps otherwise class–based invidiously discriminatory animus behind the conspirators' action." *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). But "[a]s long as the complaint contains a claim that is viable under some theory of liability, it survives a motion pursuant to Rule 12(b)(6) even if one or more theories it offers in support of the claim are inadequate to the task." *Wightman v. Wauconda Twp. Highway Dep't*, No. 19-CV-2344, 2021 WL 534668, at *4 (N.D. Ill. Feb. 12, 2021) (citing *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992)). Because Plaintiffs correctly identify that the facts they allege state a claim for conspiracy, their greater focus on § 1985(3) than on § 1983 is not fatal to their claim.

There are conceivable counterarguments to Plaintiffs' assertions. But Defendants do not raise them. In fact, Defendants do not respond to this theory of liability at all.[13] "[F]ailure to respond to an opposing party's argument implies concession." *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 950 (N.D. Ill. 2010) (citations omitted); *cf. Law v. Medco Rsch., Inc.*, 113 F.3d 781, 787 (7th Cir. 1997) ("Failure to contest a point is not necessarily a waiver, but it is a risky tactic, and sometimes fatal." (citations omitted)). Accordingly, the Court denies Defendants' motions as to Counts II, III, VI, and VII.

## II.     False Arrest at the Second Stop: Illinois Common Law (Counts V and VIII)

Defendants make a similar argument as to Counts V and VIII (Doc. 6, at 4), which allege false arrest claims under Illinois common law as to "all individual defendants" (Doc. 1-1, ¶¶ 63–68, 84–89). As discussed above, Plaintiffs do not allege that any Defendants besides Knight and Thompson were present for the second stop (Doc. 1-1, ¶¶ 26–31, 63–68, 84–89). Accordingly, Defendants argue the complaint fails to state a claim as to Diederich, Ferrell, Kelly, Keltner, Jiminez, and Roberts (*see* Doc. 6, at 4).[14]

In their response, Plaintiffs do not discuss their common law false arrest claims at all (*see* Doc. 9, at 3–5);[15] they therefore appear to have conceded the point. *See Midwest*

---

[13] Plaintiffs raised this argument in their response to the Williamson County Defendants' motion filed on September 23, 2025. The Williamson County Defendants did not file a reply. The Marion Defendants' motion to dismiss was filed on November 14, 2025—almost two months after Plaintiffs first argued they had stated § 1983 claims under a theory of conspiracy liability. But the Marion Defendants did not address the theory in their motion, and they did not file a reply.

[14] Defendants do not appear to argue that Plaintiffs fail to state a claim as to Knight or Thompson.

[15] Moreover, Plaintiffs' response cannot be read as *sub silentio* addressing Defendants' challenge to Counts V and VIII. First, the structure of their brief undermines any such reading. Plaintiffs begin their discussion of the claims against the individual defendants with the phrase "[t]o state a claim for relief *under 42 U.S.C. § 1983*." (Doc. 9, at 3 (emphasis added)). Counts V and VIII do not purport to state a claim under § 1983;

*Generation EME, LLC*, 768 F. Supp. 2d at 950; *see also, e.g.*, *Meeks v. Hronec*, No. 25-CV-1137, 2026 WL 452379, at *2 (S.D. Ill. Feb. 18, 2026) ("'It is not the responsibility of the Court to research and construct parties' arguments' for them." (quoting *Rocklane Co. v. Travelers Cas. Ins. Co. of Am.*, No. 17-cv-2158, 2020 WL 1320963, at *4 (S.D. Ind. Jan. 21, 2020))). Accordingly, Counts V and VIII are dismissed without prejudice as to Diederich, Ferrell, Kelly, Keltner, Jiminez, and Roberts.

### III.   *Monell* Claims Against Williamson County and the City of Marion (Counts IX and X)

In Counts IX and X, Plaintiffs raise *Monell* claims against the City of Marion and Williamson County, respectively, asserting that the unconstitutional searches and seizures at issue were attributable to municipal policies, practices, and decisions.

To survive a motion to dismiss, a plaintiff pursuing a *Monell* theory of liability must typically allege one of the following three types of municipal action: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)); *see also Bohanon v. City of Indianapolis*, 46 F.4th 669, 672 (7th Cir. 2022) (explaining that municipalities "cannot be held

---

instead, they explicitly invoke Illinois common law. Similarly, the penultimate sentence of Plaintiffs' argument asserts that each individual defendant "did their part in these *unconstitutional deprivations*." *Id.* at 5 (emphasis added). Unlike Counts II, III, VI, and VII, Counts V and VIII do not assert a constitutional violation. In other words, Plaintiffs saw their argument as encompassing only their federal claims. The Court therefore declines to construe Plaintiffs' brief as having made arguments they did not consider themselves to be making.

vicariously liable under § 1983 for the constitutional torts of their employees; for the [municipality] to be liable, a municipal policy or custom must have caused [a plaintiff's] constitutional injury" (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978))).

### A. City of Marion (Count IX)

The Marion Defendants argue (by incorporation)[16] that Plaintiffs have failed to allege sufficient facts to support *Monell* liability. (Doc. 6, at 6–7). Specifically, they point to a lack of factual allegations showing (1) a specific policy beyond "'boilerplate allegations'"; (2) a pattern of misconduct from which a policy could be inferred; (3) or "proof of knowledge and tacit approval by policy-making officials." *Id.* at 7 (quoting *Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir. 1994)) (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793–94 (3d Cir. 1989)). Instead, the Marion Defendants claim, Plaintiffs assert only "[a] single incident . . . unaccompanied by supporting history," from which a policy cannot be inferred. *Id.*

Plaintiffs respond to the Marion Defendants' motion by simply incorporating their prior response—a decision that dooms Count IX. To defend *Monell* liability for Williamson County, Plaintiffs do not rebut the contention that they failed to sufficiently allege a policy, practice, or custom. (*See* Doc. 9, at 5–7). Instead, they rely entirely on the third *Monell* prong: that a final policymaker caused their constitutional injury. (Doc. 9, at 5–7). But the complaint only identifies one final policymaker: Diederich, who is the sheriff of *Williamson County*. He is not alleged to be a policymaker (final or otherwise) for

---

[16] As discussed above, only some of the Williamson County Defendants' argumentation can be cross-applied to the Marion Defendants. *See supra* note 6.

the *City of Marion*. Accordingly, the argument is non-responsive as to Count IX. By failing

to rebut the Marion Defendants' contention that their allegations were insufficiently

specific for *Monell* liability, Plaintiffs have waived the argument.

But even if Plaintiffs had not committed waiver, the Marion Defendants have the

better of the argument. The complaint's allegations against the City of Marion (Doc. 1-1,

¶¶ 90–100) "are actually legal conclusions or elements of the cause of action, which may

be disregarded on a motion to dismiss." *McCauley v. City of Chicago*, 671 F.3d 611, 617

(7th Cir. 2011). Plaintiffs do not allege facts showing a municipal policy, widespread

practice, or deliberate indifference by City policymakers. Nor do they allege any prior

instances of similar unconstitutional traffic stops, specific deficiencies in training

programs, or any facts suggesting that City of Marion policymakers were on notice of a

pattern of unconstitutional conduct and failed to act. Instead, their claim rests solely on

the events of the traffic stop at issue and conclusory legal assertions of municipal failure.

Because such allegations are insufficient to state a claim, Count IX would be dismissed

even absent Plaintiffs' waiver.

### B. Williamson County (Count X)

The Williamson County Defendants argue Count X should be dismissed for two

principal reasons: (1) the factual allegations are insufficient under any prong of *Monell*

(Doc. 6, at 7); and (2) Sheriff Diederich's conduct *as Sheriff* cannot be the basis for the

County's vicarious liability, *id.* at 7–8.[17] Plaintiffs' response is to rely on Diederich's status

---

[17] As previously discussed, *supra* note 6, the Williamson County Defendants also challenge Count X on a
third ground: that Plaintiffs do not articulate an underlying constitutional violation committed by a

as Sheriff of Williamson County. (Doc. 9, at 5–7). They point to the Williamson County Defendants' acknowledgment that the county sheriff is "an independently elected constitutional officer" who "operates with a significant degree of autonomy from the county" (Doc. 6, at 8), arguing it is essentially an admission that he has "final policymaking authority" sufficient for *Monell* liability to attach.

But Plaintiffs misapprehend Illinois law. "[I]n Illinois, a county sheriff is an 'independently elected county officer and is not an employee of the county in which the sheriff serves.' Although Illinois sheriffs may be agents of their county, they are not subject to their county's control. As such, [c]ourts routinely dismiss *Monell* claims against counties that fail to assert any pattern of inaction or lack of enforcement on the part of the counties themselves and are actually predicated on alleged misconduct by the sheriffs' offices." *DiMaio v. Wexford Health Sources, Inc.*, No. 19-cv-06613, 2021 WL 1056848, at *6 (N.D. Ill. Mar. 19, 2021) (quoting *Martinez v. Sergeant Hain*, No. 16-cv-2237, 2016 WL 7212501, at *4 (N.D. Ill. Dec. 13, 2016)) (citations omitted); *see also Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998) (explaining that "§ 1983 suits against sheriffs in their official capacities are in reality suits against the county sheriff's department rather than the county board"). In other words, Williamson County cannot be liable under *Monell* for the actions of Diederich as policymaker, as he holds that role only with respect to the Williamson County Sheriff's Office.

---

Williamson County officer. (Doc. 6, at 6). But because Plaintiffs do state a constitutional claim in Counts II, III, VI, and VII, this third ground is unavailing.

So *Monell* liability lies, if at all, with Sheriff Diederich in his *official* capacity, not his individual capacity. *Cf, e.g.*, *DiMaio*, 2021 WL 1056848, at *2–5 (evaluating *Monell* claim against an Illinois sheriff in his official capacity separately from both a claim against him in his individual capacity and a *Monell* claim against the county). But Plaintiffs sued Diederich only in his individual capacity and concede as much in their response. (Doc. 1-1, ¶ 8; *see* Doc. 9, at 7 (expressing an intent to "seek leave to bring suit against the Sheriff in his official capacity as well")).

Count X cannot lie against Williamson County, and the only defendant against whom it could lie (Diederich in his official capacity) is—by Plaintiffs' concession—not named here. Accordingly, Count X is dismissed.[18]

## IV.    Leave to Amend

At the close of their brief, Plaintiffs make a request: "If this Court ultimately concludes that any part of the Rule 12(b)(6) Motion has merit, Plaintiffs request that they be given the opportunity to plead in more detail as they do contend that there is more than a plausible claim against each one of these Defendants." (Doc. 9, at 8). The Court construes this as a request for leave to amend their complaint.

Rule 15(a)(2) provides that courts "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Though all Defendants had an opportunity to oppose amendment in a reply or response brief, none have done so. Accordingly, the Court grants Plaintiffs leave to amend. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022)

---

[18] However, Williamson County is an indispensable party to this action under *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2000), as acknowledged by both Defendants and Plaintiffs (Doc. 6, at 8; Doc. 9, at 7). Williamson County, therefore, will not be dismissed from this action despite the dismissal of Count X.

("[T]he norm remains affording a plaintiff at least one opportunity to amend his complaint." (first citing *Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 685 (7th Cir. 2018); and then citing *Glover v. Carr*, 949 F.3d 364, 367–69 (7th Cir. 2020))).

### CONCLUSION

For these reasons, the Motion to Dismiss filed by the Williamson County Defendants (Doc. 6) is **GRANTED in part and DENIED in part**. Counts V and VIII are **DISMISSED without prejudice** as to Defendants Diederich, Ferrell, and Kelly, and Count X is **DISMISSED without prejudice**. The Motion to Dismiss filed by the Marion Defendants (Doc. 21) is **GRANTED in part and DENIED in part**. Counts V and VIII are **DISMISSED without prejudice** as to Defendants Keltner, Jiminez, and Roberts, and Count IX is **DISMISSED without prejudice**.

Further, the Court **GRANTS** Plaintiffs Phelps and Wilkerson's request for leave to amend their complaint. Any amended complaint must be filed **on or before May 26, 2026**.

**IT IS SO ORDERED.**

**DATED:  April 23, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**